IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VALERIE ALLEN, | ) | |
| | ) | |
| Plaintiff, | ) | No. 09 C 0243 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Valerie Allen filed a one-count second amended complaint against defendant City of Chicago, her former employer, alleging retaliation under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, et seq. Defendant has filed the instant motion for summary judgment. For the reasons below, the motion is denied.[1]

**BACKGROUND**

Defendant employed plaintiff, an African-American woman, from 1986 until 2008. She worked as an Assistant to the City Treasurer from April 16, 2004, through April 3, 2008, when she was terminated by the Treasurer's Office Chief of Staff, Bill Thanoukos, because of alleged sick leave abuse, unsatisfactory completion of assignments, and insubordination. The Treasurer's Office has approximately 25 employees. Because the office is so small, the staff members were expected to handle a number of tasks. In addition to her human resources

---

[1] The court denies defendant's request, made in its reply in support of its motion for summary judgment, to disregard and strike numerous of plaintiff's responses to defendant's L.R. 56.1 statements. The court will disregard any improper factual assertions. As our colleague Judge Shadur has opined, "[s]uch motions are pretty much a waste of time and effort, because this Court is of course aware of the applicable rules and will not consider noncomplying materials." See Gittings v. Tredegar Corp., 2010 WL 4930998, at *1 n.4 (N.D. Ill. Nov. 29, 2010).

responsibilities, plaintiff also maintained the office timesheets and processed the office's payment vouchers.

Plaintiff had no disciplinary issues from 2000 through December 2006, when she worked for Treasurer Judy Rice. In 2007, Rice was succeeded by Stephanie Neely, who immediately declared her expectation that the office's performance should improve across the board. Plaintiff's supervisors also included Mark Mitrovich (through July 2007), and Thanoukos (from July 2007 through the time of her termination).

Beginning in 2006, and continuing to the time of her termination, Mitrovich and Thanoukos raised perceived problems with plaintiff's ability to timely process the Treasurer's Office vouchers. The Treasurer's Office consistently ranked near the bottom of all City offices in voucher processing time. Between July and December 2007, however, the Treasurer's Office processed vouchers at or near the City-wide benchmark of 21 days. Further, in the three months preceding plaintiff's termination, the Treasurer's Office ranked near the top of all City offices in voucher processing time. In each of the four months before her termination, plaintiff individually improved her voucher processing time.

In October 2006, Mitrovich and plaintiff failed to resolve a scheduling issue regarding plaintiff's performance review. On December 1, 2006, plaintiff filed a charge with the Illinois Department of Human Rights ("IDHR"), accusing Mitrovich of harassment based on sex and race. In early 2007, Mitrovich denied plaintiff's request for a discretionary merit-based wage increase allegedly based on plaintiff's failure to participate in filling out review forms. On May 10, 2007, plaintiff filed another IDHR charge alleging that she was denied a scheduled step

pay increase as retaliation for filing the December 2006 charge. In June 2007, plaintiff requested that she no longer be supervised by Mitrovich. Her request was granted.

In June 2007, Thanoukos, at Neely's direction, orally assigned a calendar project to plaintiff, asking her to provide information on employees' attendance and their anticipated versus actual absences. The assignment did not have a deadline. Neely and Thanoukos felt that plaintiff failed to timely complete the assignment, include pertinent information, and present the information in a readily understandable manner. In late July 2007, Neely sent plaintiff an e-mail clarifying her expectations, and plaintiff ultimately completed the assignment. Another calendar project, assigned in December 2007, resulted in similar issues. There was no set due date, and formatting was left to plaintiff's discretion. Neely nonetheless indicated that this assignment was unsatisfactorily and untimely completed.

A third project-related issue arose in February 2008 when the Treasurer's Office was filling a vacant position. The assignment required plaintiff to identify on a chart whether positions were union or non-union and <u>Shakman</u>-covered or <u>Shakman</u>-exempt.[2] Plaintiff's chart incorrectly identified a position's <u>Shakman</u> status and also contained the "typo." On March 5, 2008, plaintiff was suspended without pay for one day due to her failure to perform the assignment satisfactorily. On March 15, 2008, she filed a charge alleging that the imposition of a one-day suspension was retaliation for filing her previous charges.

In addition to the issues regarding her projects, Thanoukos cited a pattern of absences as a reason for termination. Between June 4, 2007, and February 28, 2008, plaintiff took 13.5 days

---

[2] Political considerations may not be used in hiring determinations for certain City positions. See <u>Shakman v. Democratic Party of Cook County</u>, No. 69 C 2145.

of sick leave. Most of the absences fell at the beginning or end of the work week and, under City personnel rules, such patterns of sick leave may be considered abusive. Accordingly, Thanoukos issued a written reprimand on February 28, 2008. Plaintiff testified that, around the same time, Thanoukos told her that "the Treasurer was tired of [her] from filing [her] charges, because they had just received the [March 15 charge]"; defendant disputes that Thanoukos made this statement. Plaintiff requested clarification regarding her sick time abuse, but four days after Thanoukos issued the reprimand, she was terminated for her alleged failure to progress in her work performance. On April 7, 2008, plaintiff filed her fourth and final charge alleging that she was discharged in retaliation for filing IDHR charges.

## **DISCUSSION**

Summary judgment is appropriate if the evidence demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The burden is on the moving party to identify portions of the pleadings, answers to interrogatories, and affidavits that demonstrate an absence of material fact. See Celotex, 477 U.S. at 323. The burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(c). The court's role "is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." Doe v. R.R. Donnelly & Sons, Co., 42 F.3d 439, 443 (7th Cir. 1994). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Stewart v. McGinnis, 5 F.3d 1031, 1033 (7th Cir. 1993). This standard is applied with added

4

rigor in employment discrimination cases, where issues of intent and credibility often dominate. Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1038 (7th Cir. 1993) (citations omitted).

**Prima Facie Retaliation Case**

Title VII's anti-retaliation provision makes it unlawful for an employer to "discriminate against" an employee "because he has opposed any practice made an unlawful employment practice" by the statute or "because he has made a charge, testified, assisted, or participated in [a relevant] investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). An employee may prove retaliation under either the direct or indirect method of proof. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 801-02 (1973) (outlining the indirect method); Boumehdi v. Plastag Holdings, LLC, 489 F.3d 781, 792 (7th Cir. 2007) (acknowledging both methods). Under the direct method, a plaintiff must present evidence of: 1) a statutorily protected activity; 2) an adverse action; and 3) a causal connection between the protected activity and the adverse action. Sitar v. Ind. Dep't of Transp., 344 F.3d 720, 728 (7th Cir. 2003). The plaintiff may offer circumstantial evidence of intentional retaliation, including evidence of suspicious timing, ambiguous statements, and other facts that, when taken together, create an inference of discriminatory intent. Troupe v. May Dep't Stores Co., 20 F.3d 734, 736 (7th Cir. 1994). Under the indirect burden-shifting method, plaintiff must show that: 1) she is a member of a protected class; (2) she was meeting her employer's legitimate expectations; 3) she suffered an adverse employment action; and (4) other similarly-situated employees who were not members of the class were treated more favorably. See McDonnell Douglas, 411 U.S. at 801; Koski v. Standex Int'l Corp., 307 F.3d 672, 676 (7th Cir. 2002).

Plaintiff argues that she has established a prima facie case under both the direct and indirect methods. The court agrees that she has established a prima facie case using the direct method.

Defendant concedes that plaintiff engaged in three instances of protected activity during her employment: the IDHR charges that she filed on December 1, 2006; May 10, 2007; and March 5, 2008. Defendant further concedes that plaintiff suffered two adverse employment actions: her March 5, 2008 one-day suspension without pay and her April 3, 2008, termination. Defendant's denial of plaintiff's step wage increase in early 2007 constitutes an additional adverse employment action. See Bell v. Envtl. Prot. Agency, 232 F.3d 546, 555 (7th Cir. 2000) (failure to promote an employee, including by failing to approve a scheduled salary increase, is a significant change in employment status that constitutes an adverse employment action). Accordingly, the only question under the direct method is whether plaintiff has sufficiently established a causal link between her IDHR charges and her suspension, wage increase denial, or termination.

Defendant argues that plaintiff entirely fails to present evidence from which an inference of retaliation may be drawn. The court disagrees; plaintiff has presented some evidence allowing an inference of retaliation for each of the three adverse employment actions at issue. As to plaintiff's suspension, defendant argues that plaintiff was suspended because she failed to complete her assignment competently. Plaintiff responds, however, that she did the best she could on the assignment, asked questions about the assignment that went unanswered, and made only one typographical error in the assignment. Plaintiff provides evidence, in the form of documented e-mails between her and Thanoukos and/or Neely, indicating that she asked

6

questions about the assignment to which her superiors failed to respond.  Even acknowledging defendant's argument that, because the closest IDHR charge was filed approximately ten months before the suspension, the timing may not be presumptively suspicious.  Taking plaintiff's evidence in the light most favorable to her, she has established circumstances surrounding her suspension that could allow a trier of fact to find that this adverse action was a retaliation.  Plaintiff also establishes a contested issue of material fact as to whether the denial of her scheduled salary increase was retaliation.  She presents evidence that defendant had standard procedures for approving yearly salary increases, and that it failed to follow these procedures in regard to her April 2007 scheduled increase. This evidence includes a number of emails from plaintiff to Mitrovich requesting that her scheduled salary increase be approved or denied.  The evidence further shows that Mitrovich failed to provide any response or other written documentation explaining why he failed to approve or deny her salary increase.  Plaintiff thus creates a triable issue of fact as to defendant's denial of her wage increase.

Further, plaintiff has presented evidence that her termination was retaliatory.  She points to the close proximity between her IDHR charges and her termination, which can contribute to evidence of retaliation under the direct method.[3] Lang v. Ill. Dep't of Children & Family Servs., 361 F.3d 416, 419 (7th Cir. 2004) ("[C]lose temporal proximity provides evidence of causation, and may permit a plaintiff to survive summary judgment provided that there is also other evidence that supports the inference of a causal link.").  As additional evidence, plaintiff offers

---

[3] Defendant argues that the timing of plaintiff's termination is not suspicious because Thanoukos was not aware of plaintiff's IDHR charge preceding her termination.  But Thanoukos's alleged comment, expressing frustration with plaintiff's IDHR filings, indicates otherwise.

her testimony that Thanoukos commented to her that Neely was tired of plaintiff's IDHR charges. This statement is admissible as an admission by a party-opponent. Fed. R. Evid. 801(d)(2)(D) ("A statement is not hearsay if . . . "[t]he statement is offered against a party and is . . . a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship."). This statement, taken along with the suspicious timing of plaintiff's termination immediately after her third charge, constitutes evidence of retaliation.

Taking all inferences in the light most favorable to plaintiff, she has established genuine issues of material fact as to the requisite causal connection between her IDHR charges and her suspension, denial of salary increase, and termination. Because plaintiff succeeds under the direct method, the court does not address the application of the indirect method.

**Non-Discriminatory Reason for Adverse Action**

Successfully establishing a prima facie case creates a rebuttable presumption of retaliation, and shifts the burden of proof to the defendant to articulate a legitimate, non-retaliatory reason for the adverse actions. Knox, 93 F.3d at 1334. If the defendant is able to provide such a reason, the presumption of retaliation dissolves. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 511-20 (1993).

Here, defendant provides evidence sufficient to establish a non-discriminatory reason for each of its adverse actions. Over the course of several years, defendant addressed a number of concerns regarding plaintiff's job performance. The criticisms began with plaintiff's ability to timely process payment vouchers. Although plaintiff shows that, for a portion of 2007 and 2008, she met the City's expectations, she had taken too long to turn over the vouchers in a timely

manner prior to those times. Further, even though the City-wide benchmark was 21 days, the Treasurer's Office expected a quicker turnaround due to the fact that plaintiff had only 10 to 25 vouchers to process per month.

Additionally, defendant points to plaintiff's history of producing poor quality projects. This includes the calendar projects, which had to be corrected prior to being considered acceptable by defendant, thus resulting in a delay in completion. Plaintiff's failure to describe accurately a vacant position's Shakman status is also pertinent. As the office's human resources manager, plaintiff should not have made that mistake. Even more troubling, though, is defendant's evidence indicating that, after making the mistake, plaintiff told Neely to disregard the Shakman decrees.

Finally, defendant notes that plaintiff's pattern of taking sick days near the beginning or end of the work week is an indicator of leave abuse. When taken together, defendant's evidence sufficiently establishes a legitimate, non-discriminatory reason for the actions taken: plaintiff was not performing up to defendant's standards.

**Pretext**

If an employer offers a legitimate, non-discriminatory reason for its adverse employment actions, the burden shifts back to the plaintiff to present evidence that the employer's non-discriminatory reason is pretextual. Adreani v. First Colonial Bankshares Corp., 154 F.3d 389, 394 (7th Cir. 1998). Pretext is "more than a mistake on the part of the employer; pretext 'means a lie, specifically a phony reason for some action.'" Wolf v. Buss, Inc., 77 F.3d 914, 919 (7th Cir. 1996), cert. denied, 519 U.S. 866, quoting Russell v. Acme-Evans Co., 51 F.3d 64, 68 (7th Cir. 1995). A plaintiff can show that the defendant's reason is pretextual in either of two ways:

9

(1) "by showing that a discriminatory reason more likely than not motivated the employer"; or (2) "that the employer's proffered explanation is unworthy of credence." Kralman v. Illinois Dep't of Veteran's Affairs, 23 F.3d 150, 156 (7th Cir. 1994), cert. denied, 513 U.S. 948. "In essence, the plaintiff must demonstrate either that the real reason for [the adverse employment action was race, gender, or retaliation] or that the stated reason is unworthy of belief." Richter v. Hook-SupeRx, 142 F.3d 1024, 1030 (7th Cir. 1998).

Defendant explains plaintiff's suspension, denial of salary increase, and termination by stating that plaintiff had failed to improve her work performance. Plaintiff's evidence, however, could allow a rational trier of fact to conclude that this explanation is pretextual. Defendant correctly argues that plaintiff's own opinion of her job performance is insufficient to demonstrate pretext. But plaintiff has done more than offer her own opinion of her performance; she has provided evidence that the Treasurer's Office voucher-processing times were, particularly toward the end of her employment, near the top of all City offices. Further, Thanoukos's alleged comment indicates defendant's frustration with plaintiff's numerous IDHR charges. Under the circumstances, plaintiff's increased efficiency in processing vouchers along with the Thanoukos comment are sufficient to create a triable issue of fact as to whether the adverse actions were based merely on poor work performance or on a retaliatory animus fueled by her IDHR charges.

**After-Acquired Evidence Defense**

Defendant offers evidence, in the form of Thanoukos's deposition testimony, that the day after plaintiff's termination, Thanoukos discovered that plaintiff had been improperly filing personnel documents, including confidential medical records. Defendant argues that because

this discovery would have provided independent grounds for immediately terminating plaintiff, any award of back pay to plaintiff must be limited to the time between her termination and the discovery of that evidence.  Plaintiff counters this evidence with an affidavit in which she avers that she always maintained the personnel files properly and kept medical records confidential.  This is sufficient to create a genuine issue of material fact.  See Skelton v. Am. Intercontinental Univ. Online, 382 F. Supp. 2d 1068, 1078 (N.D. Ill. 2005).  Further, even if defendant's after-acquired evidence definitively established that plaintiff would have been terminated shortly after her retaliatory termination, the most that would do is limit plaintiff's damages, an issue that is not currently before the court on defendant's motion for summary judgment.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is denied.  This matter is set for a report on status March 29, 2011, at 9:00 a.m.

**ENTER:** **March 15, 2011**

_____
**Robert W. Gettleman
United States District Judge**